**BISHOFF v. COMMISSIONER OF INTERNAL REVENUE.**

Circuit Court of Appeals, Third Circuit. May 25, 1928.

No. 3756.

1. **Internal revenue ⬤⟿25—Statute authorizing review of Board of Tax Appeals decisions authorizes review of matters of law, such as are raised by writ of error on review of judgment entered on jury's verdict (Revenue Act 1926, § 1003(b), 26 USCA § 1226(b).**

Revenue Act 1926, § 1003(b), 26 USCA § 1226(b), conferring jurisdiction on Circuit Court of Appeals to review decisions of United States Board of Tax Appeals, confers on designated appellate courts jurisdiction to review, not questions of fact, such as complicated accounts and disputed values, but only matters of

law, such as are raised by writ of error on review of judgment entered on the verdict of a jury.

2. **Internal revenue ⬤⟿25—Commissioner's findings as to liability for income taxes in certain years are prima facie correct.**

Finding of Commissioner of Internal Revenue that petitioner earned profits in certain enumerated years and was liable for income taxes therefor in corresponding amounts is prima facie correct.

3. **Internal revenue ⬤⟿25—Taxpayer, instituting proceeding to avoid payment of tax, must prove invalidity of tax.**

In proceeding before Board of Tax Appeals, instituted to avoid payment of a tax, which proceeding is similar and of equal formality with a suit to recover a tax paid, taxpayer has burden of proving that tax is invalid.

4. **Internal revenue ⬤⟿25—Taxpayer did not sustain burden of proving income tax assessed was invalid (Revenue Act 1919).**

In proceeding before Board of Tax Appeals by taxpayer to avoid payment of a tax, taxpayer *held* not to have sustained burden of proving that income tax assessed in accordance with Revenue Act 1919 (40 Stat. 1057) was invalid.

Petition to Review Order of United States Board of Tax Appeals.

Petition by F. G. Bishoff to review an order of redetermination made by the United States Board of Tax Appeals, sustaining a determination by the Commissioner of Internal Revenue that petitioner was liable for certain income taxes. Order of Board of Tax Appeals affirmed.

Ward Loveless, of Washington, D. C., Powell, Ludlow & Schaeffer, of Philadelphia, Pa., and Miller & Chevalier, of New York City (B. H. Ludlow, of Philadelphia, Pa., and J. Robert Sherrod and Frederick D. Graves, both of Washington, D. C., of counsel), for petitioner.

Mabel Walker Willebrandt, Asst. Atty. Gen., and L. W. Scott, J. Louis Monarch, and C. M. Charest, all of Washington, D. C., for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. On this petition to review an order of re-determination made by the United States Board of Tax Appeals sustaining a determination by the Commissioner of Internal Revenue that the petitioner earned profits in the years 1918 and 1919 and was liable for income taxes in corresponding amounts, 6 B. T. A. 570, the petitioning taxpayer raises two questions:

(1) The right of the Commissioner when determining income taxes to disregard the books and records of the taxpayer and sub-

stitute therefor as a basis of computation the average profits of corporations in the same line of business.

(2) Whether the petitioning taxpayer earned the income determined by the Commissioner or suffered actual losses during the tax years in question as shown by his returns.

[1] The first question is a mixed question of law and fact; the second is one purely of fact involving, however, the lawfulness of the order. Both raise a question of the scope of the jurisdiction of Circuit Courts of Appeals to review the decisions of United States Board of Tax Appeals. That jurisdiction is conferred by the Revenue Act of 1926 (44 Stat. 110, section 1003b [26 USCA § 1226 (b)]) and is contained in the one sentence:

"Upon such review, such courts shall have power to affirm or, if the decision of the Board is not in accordance with law, to modify or to reverse the decision of the Board, * * * as justice may require."

This provision is within the trend of recent legislation respecting fact finding tribunals with special judicial powers such as the Federal Trade Commission whose "findings of fact, if supported by testimony," are made conclusive (Comp. Stat. § 8836a–k [15 USCA §§ 41–51]; Curtis Pub. Co. v. Federal Trade Commission [C. C. A.] 270 F. 881, 911), and is generally regarded, because of the power to modify or reverse such of the Board's decisions as are "not in accordance with law," as conferring upon the designated appellate courts jurisdiction to review not questions of fact such as complicated accounts and disputed values but only matters of law such as are raised by writ of error on review of a judgment entered on the verdict of a jury. Avery v. Commissioner (C. C. A.) 22 F.(2d) 6; Brown v. Commissioner (C. C. A.) 22 F.(2d) 797. Even accepting as conclusive the Board's findings of primary facts, it sometimes happens that the reviewing court must inquire, as on writ of error, into the ultimate fact finding in order correctly to determine whether the decision is validly supported by evidence and therefore is "in accordance with law." And so in this case we accept as conclusive the Board's findings that the petitioner during the tax years in question was engaged in the business of a grocer, conducted on a "credit and delivery" as distinguished from a "cash and carry" basis, thereby involving greater costs and perhaps less profits; that his books were carelessly kept; that the invoices, bills and receipts for a

part of the time are missing, as are the original register slips of sales; that check stubs for a short period are also missing; that checks and stubs were the only record of amounts paid for repairs of automobiles and trucks, some of which were traded in as part payment for new ones; that he paid all employees in cash and kept no record of the amounts paid, telling his bookkeeper at the end of each month what he had paid for wages and bonuses; that the bookkeeper did not know and therefore did not enter the wages when paid; that sundry book entries made in 1918 and 1919 were insufficiently identified by the bookkeeper when testifying in 1925; that the only inventories of stock were estimates made in lump sums, and increases in the estimated inventories during 1918 were based on estimated increase in cost rather than in amount of goods; that the books carried no cost of buildings, equipment or automobiles from which deductions could be computed properly or even approximately; and that the accounts were in such shape that representatives of the Commissioner after an examination covering eleven days could not accurately compute and determine his correct income. On these findings of primary facts the Board made an ultimate finding of fact that the petitioner's books did not clearly reflect his income and did not make it possible for the Commissioner or for the Board itself to determine whether he had made gains or had sustained losses in the tax years and, therefore, without formally approving the Commissioner's method of computation, affirmed his determination of income earned and taxes due. This finding of ultimate fact is the essence of the decision of the Board. To review its decision we must review this finding by inquiring whether the evidence supports it.

As such an inquiry touches matters of law, we turn to the law of the case. The Revenue Act approved February 24, 1919 (40 Stat. 1057), known as the Revenue Act of 1918, exacted of every one in a prescribed class taxes on his net income, defined the term "net income" and provided the method by which it should be computed (sections 210–214 [Comp. St. §§ 6336⅛e–6336⅛g]) with respect to items to be included and items to be deducted. It further provided that net income "shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer." But the Act further provided (section 1305 [26 USCA § 1254; Comp. St. § 6371½c]) that every person liable for income tax shall keep and maintain such ac-

counting records as will enable him to make a return of his true income. Realizing human infirmities in keeping accounts, the Congress by the same Act authorized the Treasury Department to make and issue regulations in respect to keeping books in a manner that would enable taxpayers to make true returns of their incomes and required all taxpayers to conform to such regulations. Further realizing that some taxpayers would, innocently or otherwise, fail to do so, the Congress provided (section 212b [Comp. St. § 6336⅛f (b)]) that, "if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income."

[2,3] This provision is obviously necessary to insure a full collection of taxes. Otherwise citizens liable for taxes could evade payment merely by keeping books badly or by not keeping them at all. Acting under this provision the Commissioner in this case resorted to a rule of his own, based not on the facts of the taxpayer's books of account because they did not disclose them sufficiently but on his observation of earnings made and taxes paid by corporations in a like business. This rule, the petitioner says, was wholly arbitrary and unjust. Clearly the Commissioner, bound by law to determine income and assess a tax, was authorized to act upon some facts other than the undisclosed facts of the case, but whether the method he pursued was just or unjust is a matter we are not presently called upon to decide because the Commissioner, speaking through his attorney, now says that wholly aside from his method of computation, the taxes determined by him and later re-determined by the Board, when reckoned on earnings which the evidence at the hearing showed were the very minima of what the petitioner had made, are right. And so we find that the earnings determined, though impossible of precise ascertainment, were at least the earnings made. We come to this judgment by a train of reasoning beginning with the postulate that the Commissioner's finding was, in consonance with the settled rule in respect to assessments, prima facie correct. United States v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131; Brown v. Commissioner (C. C. A.) 22 F.(2d) 797; Rieck v. Heiner (C. C. A.) 25 F.(2d) 453. Next, in a suit to recover an amount paid as a tax, the taxpayer has the burden of proving as a fact that the tax is invalid. United States v. Anderson, 269 U. S. 422, 443, 46 S. Ct. 131, 70 L. Ed. 347; United States v. Mitchell, 271 U. S. 9, 46 S. Ct. 418, 70 L. Ed. 799. This proceeding before the Board of Tax Appeals, instituted to avoid payment of a tax, is in nature similar to and is of equal formality with a suit to recover a tax paid. Moreover, in a case before the Board the burden of disproving a deficiency as determined by the Commissioner is recognized to be upon the taxpayer, Avery v. Commissioner, supra; Brown v. Commissioner, supra, and is cast upon him by a rule which the Board has promulgated and has uniformly enforced (Rule 30).

[4] That the petitioner has not sustained that burden is shown by the highly complicated yet admirable analyses of the evidence in conjunction with the taxpayer's income tax returns made by the attorneys for the opposing parties. Though this evidence is in sharp conflict we have, after much labor, come to the judgment that, aside from the Commissioner's method of determining the taxpayer's earnings and corresponding taxes and aside from the admitted fact that from the returns and supplemental evidence no one can accurately compute and determine what was the true income, the taxpayer did not sustain the burden, and that he in fact made earnings and that the earnings and the resulting taxes were at least those determined by the Board. As this court is reviewing the Board's order of re-determination, not the reasoning that moved it to the order, we find that the order is sustained by the evidence and therefore must be

Affirmed.