RICHARD M. GLASSNER AND SYLVIA B. GLASSNER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1722–63. February 19, 1965.

*Richard M. Glassner*, pro se.
*Alan M. Stark*, for the respondent.

TRAIN, *Judge:* Respondent determined deficiencies in the petitioners' income taxes for the years and in the amounts as follows:

| | |
|---|---|
| 1958 | $1, 502. 70 |
| 1959 | 1, 946. 26 |
| 1960 | 1, 903. 85 |

The sole issue for decision is whether respondent erred in determining that certain life insurance premiums paid by petitioner Richard

M. Glassner were not deductible because of the provisions of section 264(a)(1) of the Internal Revenue Code of 1954.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Petitioners Richard M. Glassner (hereinafter sometimes referred to as Glassner) and Sylvia B. Glassner (hereinafter sometimes referred to as Sylvia), husband and wife, filed timely joint Federal income tax returns with the district director of internal revenue, Newark, N.J., for the taxable years 1958, 1959, and 1960. Sylvia is a party only because joint returns were filed for the years in question.

Glassner practiced law and was president and managing officer of three New Jersey corporations, Seth Boyden, Inc., Morley & Co., and Treat & Co., which engaged in the business of financing receivables arising from the sale of automobiles. In 1953 and 1955 Seth Boyden, Inc., borrowed a total of $115,000 from Leon Gerhardt (sometimes hereinafter referred to as Gerhardt), which loans were personally guaranteed by petitioners. In 1953 Glassner borrowed $4,500 from Gerhardt, which loan was personally guaranteed by Sylvia. In 1954 Morley & Co. and Treat & Co. borrowed a total of $54,000 from Samuel M. Goodman (sometimes hereinafter referred to as Goodman), which loans were personally guaranteed by petitioners.

In 1957 Seth Boyden, Inc., Morley & Co., and Treat & Co. went out of business without paying their debts to Gerhardt and Goodman. Petitioners were unable to make payment as guarantors of these debts.

On August 16, 1957, Glassner, in order to secure his indebtedness, executed an agreement for the benefit of Goodman in which he agreed to obtain life insurance, pay the premiums thereon, and designate Goodman as beneficiary thereof. A similar agreement was executed for the benefit of Gerhardt on November 14, 1957. Glassner entered into these agreements principally to protect his law practice.

Glassner obtained Metropolitan Life Insurance Co. policy No. 8–309–913, effective as of September 1, 1957, in the amount of $50,000. Goodman was designated as beneficiary and given exclusive control over the policy. Glassner also obtained Franklin Life Insurance Co. policies Nos. 1671309, 1671310, and 1671311, effective as of September 26, 1957, in the total amount of $75,000. Gerhardt was designated as beneficiary and given exclusive control over such policies.

Glassner made payments to Goodman totaling $2,776, $2,600, and $2,600 in the years 1958, 1959, and 1960, respectively. Such payments

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

were made pursuant to his agreement to pay the premiums on the life insurance policy of which Goodman was to be the beneficiary. Goodman paid the cost of the life insurance premiums and, to the extent the payments from Glassner did not fully cover their cost, he paid the balance out of his own funds.

Pursuant to his agreement, Glassner made payments totaling $3,815, $5,100, and $5,200 in the years 1958, 1959, and 1960, respectively, into an account opened by Gerhardt for the express purpose of receiving Glassner's deposits and applying them toward the premiums on the life insurance policies of which Gerhardt was beneficiary. To the extent that the deposits did not fully satisfy the cost of the premiums, Gerhardt paid the balance out of his own funds.

## OPINION

Petitioners contend that the total amounts of $6,591, $7,800, and $7,800 paid during the years 1958, 1959, and 1960, respectively, pursuant to the agreements with Goodman and Gerhardt, are allowable as deductions incurred in the carrying on of the practice of law; or alternatively, as deductions incurred for the production or collection of income, or for the management, conservation, or maintenance of property for the production of income; or alternatively, as deductions for interest. Respondent's position is that Glassner's payments come within the meaning of section 264(a)(1) and are not deductible. The issue for our decision is whether Glassner was "directly or indirectly" benefited by the premium payments he made, within the meaning of section 264(a)(1) which states as follows:

(a) GENERAL RULE.—No deduction shall be allowed for—
(1) Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, *when the taxpayer is directly or indirectly a beneficiary under such policy.* [Emphasis supplied.]

If this question is decided in the affirmative, the premiums are not deductible whether or not otherwise deductible as a trade or business, or any other, expense. Section 1.264-1, Income Tax Regs., which specifically denies a deduction for life insurance premiums otherwise deductible as trade or business expenses, provides:

(a) *When premiums are not deductible.* Premiums paid by a taxpayer on a life insurance policy are not deductible from the taxpayer's gross income, even though they would otherwise be deductible as trade or business expenses, if they are paid on a life insurance policy covering the life of any officer or employee of the taxpayer, or any person (*including the taxpayer*) who is financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary of the policy. * * * [Emphasis supplied.]

In *Jefferson* v. *Helvering*, 121 F. 2d 16 (C.A.D.C. 1941), affirming 40 B.T.A. 274 (1939), it was held that the taxpayer was "directly or indirectly" benefited by premiums paid by him on life insurance policies he obtained and irrevocably assigned to his creditors as security. The court found that if the debts were paid while the taxpayer was alive, the policies would revert to him, and that if he died before the debts were liquidated, his estate would benefit to the extent its liabilities were reduced. Although this case arose under section 24(a)(4) of the Revenue Act of 1934, that section is almost identical with section 264(a)(1). See also *Rieck* v. *Heiner*, 25 F. 2d 453 (C.A. 3, 1928), where the court held that if the policy had matured while held as collateral, the insurance proceeds would indirectly augment taxpayer's estate by decreasing his liabilities; *Klein* v. *Commissioner*, 84 F. 2d 310, 311 (C.A. 7, 1936), affirming 31 B.T.A. 910 (1934); *Benjamin Barron*, 14 B.T.A. 1022 (1929); and *J. H. Parker*, 13 B.T.A. 115 (1928).

Although Glassner did not pay the premiums directly to the insurance companies and there was contribution toward payment by the creditors, we consider the above decisions to be controlling in this matter. Not only did Glassner agree in writing to obtain insurance policies and pay the premiums thereon, but he testified that he was aware the sums he remitted were to be used solely for the purpose of paying the premiums. We cannot agree with Glassner that his insolvency precludes any chance of his ever being "directly or indirectly" benefited by the policies, especially since by his own admission he could not have continued the unobstructed practice of law without satisfying Gerhardt's and Goodman's demands for security. There is also no question that his estate's indebtedness will be reduced by the proceeds of the policy and that if he manages to pay off his indebtedness, the policy will revert to him. Any of the above considerations constitute a direct or indirect benefit within the meaning of section 264(a)(1).

Respondent has established that Glassner is benefited "directly or indirectly" by the policies. Since it has been established that section 264(a)(1) is applicable to this situation, we do not have to determine whether the premium payments were ordinary and necessary business, or other, expenses.

*Decision will be entered for the respondent.*

