T.C. Memo. 1996-507

UNITED STATES TAX COURT

SAMUEL C. STONE AND SUSAN C. STONE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26039-93.                    Filed November 13, 1996.

<u>Samuel C. Stone</u>, pro se.

<u>Ann L. Baker</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]  Respondent determined a deficiency in petitioners' 1991

_____

    [1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

Federal income tax in the amount of $9,687.  Following concessions, the issues for decision are:  (1) Whether petitioners are entitled to an interest expense deduction claimed as a miscellaneous itemized deduction on their 1991 Federal income tax return (the 1991 return); (2) whether petitioners are entitled to an additional interest deduction not claimed on their 1991 return; (3) whether petitioners are entitled to various employee business expense deductions claimed for the year 1991; and (4) whether petitioners are entitled to a deduction for credit life insurance premiums paid in 1991.

                    FINDINGS OF FACT

     Some of the facts have been stipulated and are so found. Petitioners filed a joint Federal income tax return for the year 1991.  They computed their 1991 Federal income tax liability in accordance with the cash receipts and disbursements method of accounting.  At the time the petition was filed, petitioners resided in Tulsa, Oklahoma.  References to petitioner are to Samuel C. Stone.

     Petitioner is, and was during the year in issue, a practicing attorney specializing in the issuance of municipal securities.  Petitioner conducted his law practice as a sole proprietor from 1972 until 1981.

     In June of 1981, petitioner and two other attorneys, James R. Jessup (Jessup) and Robyn Owens (Owens), incorporated Samuel C. Stone & Associates, P.C., which was a professional corporation

organized pursuant to Oklahoma law for the purpose of providing legal services. Petitioner, Jessup, and Owens were the initial shareholders and directors of this corporation. In January of 1985, the corporation's articles were amended to eliminate Owens as a shareholder and director, and the corporation's name was changed to Stone, Jessup & Styron, P.C. In January of 1986, the corporation's articles were amended again, this time changing the corporation's name to Stone Jessup, P.C. (Stone Jessup). Jessup remained a shareholder and director of Stone Jessup until his death in February of 1991. Thereafter, petitioner was the sole shareholder, director, and officer of the corporation.

During 1991, petitioner practiced law as an employee of Stone Jessup, but was not compensated as such. In addition to petitioner, Stone Jessup employed 4 or 5 other individuals on a full-time basis during that year. As an employee of Stone Jessup, petitioner was required to travel for various business-related reasons and to entertain clients of Stone Jessup. On some occasions, Stone Jessup would directly pay for petitioner's travel and client entertainment expenses. On other occasions petitioner would pay his own travel expenses and the expenses he incurred in entertaining Stone Jessup's clients. Stone Jessup only paid petitioner's travel expenses and the client entertainment expenses when corporate funds were available to do so. In prior years, Stone Jessup usually reimbursed petitioner for expenses he incurred on its behalf. Petitioner was not

reimbursed for all of the expenses he incurred in 1991 as an employee of Stone Jessup because the corporation did not have sufficient funds to do so. As a director and officer of Stone Jessup, petitioner had the authority to set corporate policy and determine how corporate funds were spent.

During 1991 petitioner incurred the following expenses in connection with his employment with Stone Jessup:

| | |
|---|---|
| Vehicle | $2,673.06 |
| Parking fees, tolls, etc. | 270.00 |
| Travel | 1,242.21 |
| Meals and entertainment | 2,603.23 |
| Workshops, forums | 90.86 |

Respondent disallowed petitioners' deduction attributable to the above categories of expenses, explaining in the notice of deficiency that "these expenses are not deductible because they relate to the production of corporate income".

In 1972, in connection with his practice of law as a sole proprietor, petitioner arranged a revolving line of credit with Walnut Valley State Bank of El Dorado, Kansas (the bank). The line of credit was used for payroll and other general operating expenses incurred by petitioner in connection with his law practice. This line of credit was ultimately assumed and used by Stone Jessup. The bank required the line of credit to be secured by accounts receivable and other assets of Stone Jessup, as well as certain business assets owned and used by petitioner in connection with his law practice.

By December of 1987, Stone Jessup's debt to the bank exceeded $400,000. Notes evidencing the debt were due and had to be paid or refinanced. Because of Stone Jessup's financial situation at the time, the bank was unwilling to renew Stone Jessup's loans or grant the corporation further extensions of credit unless: (1) Petitioner assumed personal liability for any existing or future debt by acting as a comaker with Stone Jessup on various debt instruments; (2) petitioners agreed to collateralize the debt by placing a mortgage on their residence in favor of the bank; (3) certain stock owned by petitioner was pledged to the bank; and (4) petitioner obtained, at his expense, certain minimum levels of credit life insurance naming the bank as beneficiary. Beginning in 1988, Stone Jessup's and petitioner's credit arrangements with the bank were restructured in accordance with the above terms.

On a Schedule A filed with their 1991 return, petitioners claimed a miscellaneous itemized deduction in the amount of $41,906.55 for interest payments made to the bank during that year on account of loans made under the above-discussed credit arrangements. Of the amount deducted, $41,496.98 was "paid" to the bank by notes co-made by Stone Jessup and petitioner (the relevant notes were signed by petitioner, individually, and in his capacity as president of Stone Jessup), and $409.57 was paid directly to the bank on petitioner's behalf as a gift from petitioner's father, who was a director of the bank. In

addition, petitioner's father made a $10,521.57 interest payment to the bank on petitioner's behalf, which payment forms the basis for the additional interest deduction claimed by petitioners in this case.  All of the interest involved with respect to the interest deductions in dispute in this proceeding; i.e. $52,428.12, is attributable to the indebtedness incurred by Stone Jessup and petitioner pursuant to the above-described line of credit with the bank.

Respondent disallowed the interest deduction claimed as a miscellaneous itemized deduction upon the ground that "a note issued as 'payment' for interest is not the equivalent of cash".[2]

During 1991, petitioners claimed deductions amounting to $1,142.88 for the premiums paid for the credit life insurance policies petitioner was required to obtain pursuant to the above-discussed credit arrangement with the bank.  The bank was the named beneficiary with respect to each of the relevant life insurance policies.  Respondent disallowed the deductions, explaining in the notice of deficiency that the "expense related to the production of corporate income".

OPINION

Deductions for Interest

---

[2]Respondent's explanation does not address the portion of the interest expense deduction attributable to the payment of interest by petitioner's father on petitioner's behalf.  We consider the different ways in which the interest was "paid" in separate sections of this opinion.

1. Use of Notes To Satisfy Interest Liability

Although limited elsewhere in the statute, in general, section 163(a) permits a taxpayer to deduct "all interest paid or accrued within the taxable year on indebtedness." For cash basis taxpayers, like petitioners, the interest must be paid in cash or its equivalent. Don E. Williams Co. v. Commissioner, 429 U.S. 569, 578-579 (1977); Eckert v. Burnet, 283 U.S. 140, 141 (1931); Menz v. Commissioner, 80 T.C. 1174, 1185 (1983). A promissory note is generally not considered the equivalent of cash, but merely a promise to pay. Helvering v. Price, 309 U.S. 409, 413 (1940); Nat Harrison Associates, Inc. v. Commissioner, 42 T.C. 601, 624 (1964). If the interest obligation is satisfied through the issuance of notes to the same lender to whom the interest obligation is owed, as in this case, there has been no payment of interest; rather, payment has merely been postponed. Davison v. Commissioner, 107 T.C. 35 (1996). Accordingly, petitioners, being cash basis taxpayers, are not entitled to an interest deduction for the interest obligations satisfied by the issuance of notes to the bank because the interest has not been paid within the meaning of section 163(a).[3]

2. Interest Paid to Bank by Petitioner's Father

In 1991, petitioner's father made interest payments of $409.57 and $10,521.57 to the bank on petitioner's behalf as

---

[3]See infra note 4.

gifts to him.  The former payment was included in the miscellaneous itemized interest deduction claimed on petitioners' 1991 return.  The latter payment is the basis for the additional interest deduction petitioners are claiming in this proceeding.

We have previously made reference to section 163(a), which generally allows a deduction for all interest paid or accrued within the taxable year.  However, section 163(a) is limited by section 163(h)(1), which provides that in the case of a taxpayer other than a corporation, no deduction shall be allowed for personal interest.  Section 163(h)(2) defines personal interest to include any interest other than interest which arises in connection with five specified situations, none of which is applicable to this case.

Petitioners argue that the interest is attributable to petitioner's trade or business, and we agree.  But petitioner's trade or business during 1991 was as an employee of Stone Jessup; consequently, the interest is considered personal interest.  Sec. 163(h)(2)(A).  No doubt in petitioner's view the distinction between Stone Jessup's trade or business and his own is less apparent than real. (For a discussion on this point see Souris v. Commissioner, T.C. Memo. 1996-450.)  Nevertheless, petitioner chose the form of business through which he pursued his profession, and he is bound by the Federal income tax consequences of his choice.  See Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943).  Accordingly, the interest

paid on petitioner's behalf by petitioner's father constitutes nondeductible personal interest as that term is used in section 163(h)(1).[4]

We have also considered, and reject, petitioners' alternative argument that the interest deductions should be allowed under the provisions of section 166. That section generally allows a deduction for any bad debt that becomes worthless during the taxable year. In order to be entitled to a section 166 deduction, petitioners must establish that petitioner was owed a bona fide debt by Stone Jessup on account of the interest payments made, and that such debt became worthless in 1991. Rule 142(a); Crown v. Commissioner, 77 T.C. 582, 598 (1981); Rude v. Commissioner, 48 T.C. 165, 172 (1967). This they have failed to do. Even assuming that petitioner's status as a comaker on the notes with Stone Jessup resulted in a debtor-creditor relationship between the two because it was petitioner rather than Stone Jessup who satisfied the obligations created by the notes, there is nothing in the record to indicate that any debt that would have resulted was worthless as of the close of 1991. Accordingly, petitioners have not established that they are entitled to a bad debt deduction pursuant to section 166 on account of the interest payments made to the bank.

---

[4]As an aside, we note that the provisions of sec. 163(h)(1) also prohibit petitioners from deducting the interest paid by the notes.

Employee Business Expense Deductions

During 1991 petitioner paid the following expenses in
connection with his employment with Stone Jessup:

| | |
|---|---|
| Vehicle | $2,673.06 |
| Parking fees, tolls, other trans. | 270.80 |
| Travel | 1,242.21 |
| Meals and entertainment | 2,603.23 |
| Workshops, forums | 90.86 |

Petitioners argue that the expenses are deductible as employee
business expenses pursuant to section 162(a).

In general, a taxpayer is entitled to deductions pursuant to
section 162(a) for all ordinary and necessary expenses paid or
incurred during the taxable year in carrying on a trade or
business. The term "trade or business" as used in section 162(a)
includes the trade or business of being an employee. Primuth v.
Commissioner, 54 T.C. 374, 377 (1970); Christensen v.
Commissioner, 17 T.C. 1456 (1952); Abraham v. Commissioner,
9 T.C. 222 (1947). An expense is ordinary if it is considered to
be "normal, usual, or customary" in the context of the particular
business out of which it arose. Deputy v. du Pont, 308 U.S. 488,
495 (1940). An expense is necessary if it is appropriate and
helpful to the operation of the taxpayer's trade or business.
Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Carbine v.
Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th
Cir. 1985). Corporate officers, employees, and shareholders who
voluntarily incur corporate expenses are generally not entitled
to deductions for these expenditures because such expenditures

are not considered necessary.  Deputy v. du Pont, supra; Noland v. Commissioner, 269 F.2d 108, 109 (4th Cir. 1959); Westerman v. Commissioner, 55 T.C. 478, 482 (1970); Stolk v. Commissioner, 40 T.C. 345, 357 (1963), affd. 326 F.2d 760 (2d Cir. 1964); Jergens v. Commissioner, 17 T.C. 806, 811 (1951); Harding v. Commissioner, T.C. Memo. 1970-179.  Merely because an employer is financially unable to reimburse an employee for expenses paid by the employee on the employer's behalf does not necessarily entitle the employee to a deduction.  Thomas v. Commissioner, T.C. Memo. 1988-505.

On the other hand, if, as a condition of employment, an employee is required to incur expenses on behalf of his or her employer, the employee is entitled to a deduction for those expenses that are ordinary and necessary to his or her business as an employee to the extent such expenses are not subject to reimbursement.  Schmidlapp v. Commissioner, 96 F.2d 680 (2d Cir. 1938); Eder v. Commissioner, T.C. Memo. 1981-408.

Respondent argues that the expenses do not constitute ordinary and necessary employee business expenses within the meaning of section 162(a) because petitioner, as a corporate officer and employee of Stone Jessup, incurred the expenses voluntarily and not because Stone Jessup required him to do so as a condition of his employment.  We do not agree.

As the only director and officer of Stone Jessup, it would have been petitioner who would have established the conditions of

his own employment.  We find that as an officer and director of Stone Jessup petitioner established the requisite corporate policy that would allow him, as an employee of the corporation, to deduct any unreimbursed employee business expenses he incurred in connection with his employment.  See Theodore Souris, P.C. v. Commissioner, T.C. Memo. 1996-450.  We therefore find that as a condition of petitioner's employment with Stone Jessup he was required personally to pay expenses that he incurred in connection with such employment.  We further find that petitioner was only entitled to reimbursement from Stone Jessup for such expenses if Stone Jessup was financially able to do so, which during the year in issue, was not the case.  Accordingly, we hold that petitioners are entitled to a deduction for the employee business expenses specifically listed above in this section of the opinion.

Credit Life Insurance Premiums

Pursuant to the previously discussed line of credit with the bank, petitioner obtained several credit life insurance policies, each naming the bank as beneficiary, and paid $1,142.88 in premiums.  The manner in which petitioners deducted the expenses for the premiums on their 1991 return, partly on a Form 2106 and partly as a miscellaneous itemized deduction, leads us to conclude that they rely upon section 162(a), section 212(2), or both, in support of the deductions.  However, we need not consider whether the deductions should be allowed under either of

those sections because of section 264(a)(1).  That section disallows any deduction for life insurance premiums paid if the insured is an employee, officer, or is otherwise financially interested in the trade or business carried on by the taxpayer, and is directly or indirectly a beneficiary under the policy. Obviously, petitioner had a financial interest in his own trade or business.  Furthermore he directly or indirectly was a beneficiary of the policies, even though the bank was the named beneficiary.  A taxpayer who is required, as a condition of obtaining a loan, to purchase a life insurance policy which names the creditor as beneficiary, is "directly or indirectly" benefited within the meaning of section 264 and therefore precluded by the operation of that section from deducting the premiums under sections 162 or 212.  See Jefferson v. Helvering, 121 F.2d 16, 17 (D.C. Cir. 1941), affg. 40 B.T.A. 274 (1939); Klein v. Commissioner, 84 F.2d 310 (7th Cir. 1936), affg. 31 B.T.A. 910 (1934); Rieck v. Heiner, 25 F.2d 453 (3d Cir. 1928); Glassner v. Commissioner, 43 T.C. 713 (1965), affd. per curiam 360 F.2d 33 (3d Cir. 1966); Ragan v. Commissioner, T.C. Memo. 1980-94; King v. Commissioner, T.C. Memo. 1963-267.  Accordingly, petitioners are not entitled to deductions for the premiums petitioner paid to obtain the life insurance required in connection with the loans from the bank.

To reflect the foregoing,

Decision will be entered

<u>under Rule 155</u>.